NO. 07-03-0240-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C
 


SEPTEMBER 3, 2003


______________________________






XCEL ENERGY, THIRD PARTY DEFENDANT,




 Appellant


v.



SHERRI LEE HOLLIS, 




 Appellee


 

_________________________________



FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;



NO. 50,756-C; HON. PATRICK A. PIRTLE, PRESIDING 


 _______________________________


Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

MEMORANDUM OPINION


 Appellant Xcel Energy, by and through their attorneys, have filed a motion to
dismiss this appeal because they longer desire to prosecute it. Without passing on the
merits of the case, we grant the motion to dismiss pursuant to Texas Rule of Appellate
Procedure 42.1(a)(2) and dismiss the appeal. Having dismissed the appeal at appellant's
request, no motion for rehearing will be entertained, and our mandate will issue forthwith.

 Brian Quinn

 Justice



w:UseAsianBreakRules/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-0031-CR

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL C

 

JULY 16, 2010

 

______________________________

 

 

CHARLES BLACKBURN, JR., APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

 

 

_________________________________

 

FROM THE 277TH DISTRICT COURT OF WILLIAMSON
COUNTY;

 

NO. 08-1008-K277; HONORABLE KEN ANDERSON, JUDGE

 

_______________________________

 

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

            Following a
plea of not guilty, Appellant, Charles Blackburn, Jr. was convicted by a jury
of two counts of aggravated robbery, with an affirmative finding on use of a
deadly weapon, a first degree felony.[1]  Punishment was assessed at thirty years
confinement as to each count, with the sentences to be served concurrently.  Presenting two points of error, Appellant
challenges his conviction and sentence. 
By his first point, he raises a multifarious argument[2] regarding
whether the BB gun used in the robbery in question was a deadly weapon.  Specifically, he questions the qualifications
of the State's expert witness, alleges abuse of discretion by the trial court in
overruling his objection to the admission of State's Exhibit No. 233, a website
printout of Crosman Products, the BB gun manufacturer, and challenges admission
of the State's expert witness's testimony as it relates to certain firing tests
performed.  By point of error two, which
relates only to punishment, Appellant contends the trial court abused its
discretion in denying the admission of his co-defendant's
videotape statement because the denial deprived him of his constitutional right
to present a defense.  We affirm.

Factual Background

            On
January 30, 2008, Appellant robbed the Bank of America in Round Rock,
Texas.  His co-defendant mother, Diedre
Blackburn, who had an account at the bank, entered the bank at approximately 3:13
p.m. to make a deposit.  While she was being
waited on by a teller, Olivia Ortega, Appellant entered the bank, walked toward
Ortega's window, pushed Diedre aside, and demanded money.  Ortega complied in accordance with her
training.  

During the robbery, Appellant wore a
hoody, a knit cap, and a bandana over his face, while exhibiting a weapon later
discovered to be a BB gun.  After the
robbery, Appellant fled on foot, but he was seen by an assistant bank manager ducking
behind a nearby truck.  The bank manager wrote
down the license plate of the truck, while other witnesses at a nearby business
photographed the truck and its license plate with their cell phones.  

Following the robbery, the bank
manager asked Diedre to stay and give a statement.  Diedre insisted, however, that she needed to
leave for medical reasons.  She left her
contact information and proceeded toward her truck, which she had
inconveniently parked away from the bank. 
When the assistant bank manager observed Diedre enter the same truck she
had witnessed Appellant duck behind, she surmised that Diedre was involved in
the robbery.  

            Officer
Jim Weber responded to the aggravated robbery call when he spotted the
suspected truck and confirmed the license plate.  He radioed that he was in pursuit of the
truck and backup officers were dispatched. 
Officer Weber followed the truck to a subdivision in Pflugerville,
activated his patrol car lights, and stopped the vehicle near the house where
Appellant and Diedre had been staying with friends.  Due to the nature of the call, the stop was
considered high risk and Officer Weber drew his weapon and issued commands to
Appellant and Diedre.  Notwithstanding
their compliance with his commands, Officer Weber testified that Appellant was
verbally aggressive and belligerent. 
Backup officers, detectives, and FBI agents arrived on the scene.  In plain view inside the truck, the officers observed
a hoody, black ski mask, bandana, green mesh bag, and tan gloves.  Having determined probable cause to search
the truck existed, backup officers conducted a search and found an air pistol
and a bag containing over $10,000 in cash.

            Officer
Donald D'Amour testified that Appellant was handcuffed and placed in his patrol
car.  Diedre was also handcuffed and
taken to the police department where Detectives Shawn Scott and Jeff Hill
interviewed her for approximately ninety minutes.  Based on Diedre's interview and their
investigation, Appellant was indicted for five counts of aggravated robbery
committed in four different robberies, to wit: 
two counts on January 19, 2007; one count on December 1, 2007, one count
on January 10, 2008, and one count for the Bank of America robbery on January
30, 2008.[3]  The State decided to prosecute Appellant only
for the two 2008 aggravated robberies.   At the time of those
robberies, Appellant was only sixteen years old; however, he was subsequently certified
to be tried as an adult.    

During the lengthy punishment phase,
the State sought to prove that Appellant also committed the two 2007 robberies.  Appellant theorized that he was innocent of
the two extraneous robberies because those robberies were committed by someone
exhibiting an actual firearm, while he only owned a BB gun.  After weighing the evidence, the jury
sentenced Appellant to thirty years confinement for each offense and this
appeal followed.[4]  

 

Analysis

I.          Point of Error One

            By
his first point of error, Appellant challenges (1) the qualifications of Chris
Herndon, the State's expert witness, (2) alleges error by the trial court in
overruling his objection to Herndon's testimony regarding State's Exhibit No. 233,
a website printout of Crosman Products, the BB gun manufacturer, and (3) questions
the relevancy of tests performed by firing the BB gun into a watermelon and an
unknown type of wood.  Essentially,
Appellant's complaints challenge the trial court's evidentiary rulings in
relation to the jury's deadly weapon finding.

            In
reviewing a trial court's ruling on the admissibility of evidence we utilize an
abuse of discretion standard.  Prystash v. State, 3 S.W.3d 522, 527
(Tex.Crim.App. 1999).  We will not
disturb the trial court's ruling if it was within the zone of reasonable
disagreement. Montgomery v. State,
810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g).

            A deadly weapon is defined as a
firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury or anything that in the manner of its
use or intended use is capable of causing death or serious bodily injury.  Tex. Penal Code Ann. § 1.07(17)(A) and (B)
(Vernon Supp. 2009).  The placement of
the word "capable" is crucial to understanding the method of
determining deadly-weapon status.  Tucker v. State, 274 S.W.3d 688, 691
(Tex.Crim.App. 2008). Serious bodily
injury is bodily injury that creates a substantial risk of death or that causes
death, serious permanent disfigurement, or protracted loss or impairment of the
function of any bodily member or organ.  Id. at (46).

In determining whether an object used in the commission of an
offense is a deadly weapon, the jury may consider all the surrounding facts,
including the defendant=s words and whether the victim feared
death or serious bodily injury.  Blain v. State, 647 S.W.2d 293, 294 (Tex.Crim.App. 1983).  See Hernandez v. State, 649 S.W.2d 720, 722 (Tex.App.BAmarillo 1983, no pet.). 
The State need not prove that the complainant actually sustained serious
bodily injury for the alleged weapon to be a deadly weapon.  Jefferson v. State,
974 S.W.2d 887, 892 (Tex.App.BAustin 1998, no pet.). 
In fact, wounds are not a necessary prerequisite for an object to be considered
a deadly weapon. Turner v. State, 664 S.W.2d 86, 90
(Tex.Crim.App. 1983).  Neither
does the State have to show that the accused intended to cause serious bodily
injury.  Lane v. State, 111 S.W.3d
203, 210 (Tex.App.BEastland 2003), aff=d, 151 S.W.3d 188 (Tex.Crim.App. 2004) (quoting Clark
v. State, 886 S.W.2d 844, 845 (Tex.App.BEastland 1994, no pet.). 
  Either expert or lay testimony
may be sufficient to support a deadly weapon finding by the jury.  English
v. State, 647 S.W.2d 667, 668-69 (Tex.Crim.App. 1983).

            A.
       Chris Herndon's Qualifications

            Appellant insists there
is no showing that Investigator Chris Herndon was qualified as an expert during
the guilt/innocence phase regarding whether a BB gun is a deadly weapon.  Appellant concedes that Herndon was qualified
as a firearms expert; however, he references Herndon's testimony that a BB gun
is not a firearm and deduces that Herndon, therefore, had no expertise to
testify on compressed air guns.  We do
not agree.  

            Herndon testified that
he was a peace officer since 1994 before becoming an investigator for the
district attorney's office ten years earlier. 
A police officer can be an expert witness with respect to whether a
deadly weapon, other than a firearm, is used.  See
generally Tucker, 274 S.W.3d at 691-92 (finding police officer was
qualified to testify whether a knife or key was used as a deadly weapon).  At trial, Appellant objected to Herndon's
testimony on hearsay grounds; his complaint on appeal is that Herndon was not
qualified to testify as an expert on compressed air pistols.  His complaint on appeal does not comport with
his trial objection.  See Mays v. State, No. AP-75,924, 2010 Tex.Crim.App. LEXIS 480,
at *62 (Tex.Crim.App. April
28, 2010) (citing Guevara v. State,
97 S.W.3d 579, 583 (Tex.Crim.App.
2003).  Consequently, his contention
regarding Herndon's expertise is not preserved for appellate review.  

            B. 
      Crosman Products Website Printout

            Early during Herndon's
testimony, the State offered Exhibit No. 232, a receipt for a BB gun purchased
for testing.  The gun was identical to
the one used in the robberies.   Defense
counsel requested, and was permitted, an opportunity to take Herndon on voir
dire regarding the purchase of the BB gun.  See Tex.
R. Evid. 705(b).  After voir dire, defense counsel lodged a
relevancy objection to Exhibit No. 232.  The
trial court sustained the objection and disallowed introduction of the receipt.  

            When the State then
offered Exhibit No. 233, a printout from the website of the BB gun
manufacturer, Crosman Products, defense counsel objected "to hearsay as to
anything that might be in these documents."  Before the trial court ruled, the prosecutor
asked Herndon if the company specifics had aided him in his testing and whether
the exhibit would aid the jury in understanding his testimony.  After Herndon answered affirmatively, the
State offered Exhibit No. 233 and defense counsel again objected on hearsay
grounds.  This colloquy followed:

Court: He's an expert. 
233 is admitted.

 

[Defense counsel]: May I take the witness on voir
dire?

 

Court: You already did, and I already admitted it.

 

[Defense counsel]: Well, I'd like to take him on voir
dire for purposes of this objection.

 

Court: But you already took him on voir dire, you made
your objection, and I overruled it.

 

[Defense counsel]: 
On a different issue, Judge.

 

* * *

 

Court:  Your
previous objection was overruled, yes.

 

[Defense counsel]: May I take the witness on voir
dire?

 

Court: Not to object to the same piece of evidence.

 

[Defense counsel]: 
No, this is new evidence, Judge.

 

Court: I'm sorry. I thought 233 is
the specifications from the company.

 

[Defense counsel]: 
Yes, it is.

 

Court:  And I
already admitted it.  You had already
taken him on voir dire and made an objection, and I admitted it.

 

            Rule
705(b) of the Texas Rules of Evidence is clear. 
If a criminal defendant timely requests to conduct voir dire examination
of an expert, the trial court shall permit him to question the expert on the
underlying facts or data upon which the opinion is based.  See
Tex. R. Evid. 705(b).  See also Alba v. State, 905 S.W.2d 581, 587-88 (Tex.Crim.App.
1995).  Rule 705 permits an
abbreviated method of laying the groundwork before asking for an expert's
opinion.  Id. at 588.  As noted by the Court of Criminal Appeals, "the
focus of Rule 705(b) is to prevent the jury from hearing the underlying facts
and data which might ultimately be ruled as inadmissible."  Id.

            Rule
705(b) is mandatory.  Id. 
A trial court's denial of a timely and proper request constitutes
error.  Id.  In such a case, a
reviewing court is required to decide whether the trial court's error was so
harmful as to require reversal.

            Relying
on Alba, the State maintains that Appellant's request was not timely.  We disagree. 
In Alba, the defendant did not
object until the "cat was already out of the bag."  Harris
v. State, 133 S.W.3d 760, 774 (Tex.App.--Texarkana 2004, pet. ref'd).  In
the underlying case, although the exhibit itself had already
been admitted into evidence, neither the exhibit, nor the specifics from
the exhibit, had been published to the jury when Appellant objected to the
exhibit on hearsay grounds.  The trial
court's immediate and hasty ruling in labeling Herndon an expert and admitting
Exhibit No. 233 effectively denied Appellant the opportunity to request voir
dire examination before admission of the exhibit.  Under the scenario presented in this record,
fairness dictates that we find Appellant's request was timely, and the trial
court erred in denying him the opportunity to conduct a second voir dire
examination of Herndon on this new piece of evidence.  Even though we have found this decision to be
error, we must now determine the effect of that error.  Error in denying voir dire under Rule 705(b)
constitutes non-constitutional error that is subject to harm analysis. Alba, 905 S.W.2d at
588.  

            Non-constitutional
error must be disregarded unless it affected the substantial rights of the
accused.  Tex. R. App.
P. 44.2(b).  In other words, a
conviction should not be reversed unless a reviewing court, after examining the
record as a whole, has a fair assurance that the error did not influence the
jury or had but a slight effect.  McDonald v. State, 179
S.W.3d 571, 578 (Tex.Crim.App. 2005).    


            Here,
the State sought to use Herndon to testify regarding whether a BB gun is a
deadly weapon and Herndon testified as much. 
However, Herndon was not the only witness to testify that the weapon
used was a deadly weapon.  During the
State's case-in-chief, Bank teller Charity Childress also testified that on
January 10, 2008, when she was robbed, the suspect entered the bank and pointed
the gun at her face, placing her in fear of death or serious bodily
injury.  Furthermore, Bank teller Olivia
Ortega, who was pregnant at the time of the January 30, 2008 robbery, testified
that the suspect pointed the gun at her head, causing her to fear for her life
and the health of her unborn baby.  

            Either
expert testimony or lay testimony may be sufficient to support a deadly weapon
finding by a jury.  See English, 647 S.W.2d at 669.  See
also Quincy v. State, 304 S.W.3d 489, 500 n.10
(Tex.App.--Amarillo 2009, no pet.). 
The unobjected-to testimony of Childress and Ortega regarding their fear
of death or serious bodily injury from having a BB gun pointed at them is
sufficient to support a deadly weapon finding. 
See Tex. Penal Code Ann.  § 1.07(a)(17)(B)
(Vernon Supp. 2009).[5]  See also Adame v. State, 69 S.W.3d 581,
581-82 (Tex.Crim.App. 2002).  Therefore,
notwithstanding the trial court's erroneous denial of Appellant's request to
conduct voir dire examination of Herndon and the subsequent admission into
evidence of the Crosman website printout, we have a
fair assurance the error did not influence the jury or had but a slight effect
and does not require reversal of Appellant's conviction. 

            C.        Relevancy of Tests Performed by Herndon

Herndon also testified that he test fired the BB gun used in
the robberies into a watermelon and an undetermined type of wood.  Appellant argued at trial and argues here
that the tests were not relevant, and testimony regarding them should have been
excluded.  Herndon explained that he used
watermelon and wood as mediums which the average person could understand.  Where tests showed that a projectile
discharged by the BB gun traveled a median of 263 feet per second, he opined
that pointing the BB gun into someone's face could penetrate the eye and cause
serious bodily injury.  Based on his
tests and the underlying data, Herndon was able to form an opinion that that
the BB gun was capable of causing death or serious bodily injury.  Although the State did not establish whether
the BB gun was loaded at the time of the robberies, the Texas Court of Criminal
Appeals has held that is not significant in a deadly weapon analysis.  Adame, 69 S.W.3d at 582 (finding that evidence that
appellant displayed a BB gun to convenience store clerk and that the gun was
capable of causing serious bodily injury if pointed and fired at someone was
sufficient to support jury's deadly weapon finding).  

Because the crux of Appellant's multifarious point is a
challenge to the jury's deadly weapon finding, albeit argued via evidentiary
rulings, the State was required to show that the use or intended use of the BB
gun was capable of causing death or
serious bodily injury.  Tucker, 274 S.W.3d at
691.  Charity Childers, the Bank of America teller
who was robbed on January 10, 2008, testified that the suspect pointed a gun at
her face and she was in fear of death or serious bodily injury.  State's Exhibit No. 2 showed a suspect
holding a gun similar to Appellant's BB gun during one of the 2008 robberies in
very close proximity to a bank teller's head. 
Whether the BB gun was loaded is not significant.  Adame, 69 S.W.3d at 582.  Cf.
Mosley v. State, 545 S.W.2d 144, 145-46 (Tex.Crim.App. 1976) (deciding whether
an air pistol, as used, was a deadly weapon under the newly enacted definition
of "deadly weapon").  But see Mosely,
545 S.W.2d at 146 (op. on reh'g) (addressing the State's concern that the
opinion on original submission held that an air pistol could never be a deadly
weapon and concluding that the original opinion did not attempt to exclude all
types of air guns from the definition of a firearm).  Because the evidence supports that Appellant's
BB gun was capable of causing serious
bodily injury, the jury was justified in finding that Appellant used a deadly
weapon during the two 2008 robberies.  We
conclude the challenged evidentiary rulings of the trial court fell within the
zone of reasonable disagreement and we will not disturb those rulings.  See Resendiz v. State, 112 S.W.3d 541,
544 (Tex.Crim.App. 2003).  Point of error one is overruled.

II. 
       Point of Error Two

            By
his second point of error, Appellant again challenges an evidentiary ruling of
the trial court.  Here, he maintains the
trial court erred in refusing his request to admit the videotape statement of
his co-defendant, Diedre, because the statement would have dispelled
allegations that he was involved in the extraneous robberies, thereby depriving
him of his Sixth Amendment right to present a defense.[6]  

            A.        Background

            Following
her arrest, Diedre gave a videotaped statement to Detective Scott that was
about an hour and a half long.  In that
statement she implicated Appellant in all four robberies originally charged in
the indictment, but she stated that he "never had a real gun."  During the punishment phase of trial,
firearms expert Herndon testified that the January 19, 2007 robbery was
committed with an actual firearm, a Sig Sauer P226.  He also testified that the December 1, 2007
robbery was committed with either a Sig Sauer or a Heckler and Kock compact USP, both actual firearms.  Appellant contends that introduction of the
videotape would have promoted his defense that he did not commit the two 2007
robberies because it would have established that he did not own a firearm like
the ones used in those robberies.

            The
videotape statement in question was not admitted into evidence during the
guilt/innocence phase of the trial; however, at the punishment phase, during
Appellant's cross-examination of Detective Scott, the trial court attempted to
limit Appellant's use of that statement. 
At the time, defense counsel argued that the State's questioning of
Detective Scott had opened the door to the admission of the statement and that
the statement was admissible pursuant to Appellant's Sixth Amendment right of
confrontation. 

            The
State's line of questioning during Detective Scott's punishment phase testimony
had focused on the detective's decision to charge Appellant with all four
robberies.  During cross-examination, defense
counsel asked Detective Scott the following:

Q. So the evidence you got
from Diedre Blackburn was that she drove [Appellant] to each robbery, correct?

 

He responded, "That is
correct."  After a follow-up
question, the following colloquy ensued: 

[Prosecutor]:  Your Honor, I'm going to object to any
questioning about exactly what Diedre Blackburn said.  Counsel knows that violates the
constitutional right of the defendant.

[Defense Counsel]: I'm
sorry.  I don't understand the objection.

[Prosecutor]: I'm going to
object to any Crawford violations propounded by the defense to this witness.

[Defense Counsel]:  Your Honor, it's not offered for the truth of
the matter.  We don't think it's
true.   It's offered to show how this
detective conducted his investigation.

 

The judge asked everyone to
approach for an on-the-record bench conference. 
After he advised the prosecutor that it was not up to him to defend the
defendant's constitutional rights, the State again expressed Crawford[7]
concerns if the defense was allowed to admit certain portions of Diedre's statement without the State being allowed to
introduce the remainder of the statement. 
The judge expressed frustration and commented that the quality of
Detective Scott's investigation was not a relevant punishment issue and advised
the parties to continue with the punishment phase.  He asked defense counsel if Diedre's statement was the "avenue he wanted to go
down."  He replied, "Yes,
Judge.  That's why I'm doing it."

            Defense
counsel was then permitted to question Detective Scott about his interrogation
with Diedre.  Defense counsel wanted to
show that Diedre had been badgered into admitting that Appellant had been
involved in all four robberies.  The
State made a relevancy objection to defense counsel attempting to challenge the
voluntariness of Diedre's statement, which the trial
court sustained.  Outside the jury's
presence, the State made another Crawford
objection.  The judge, again expressing
frustration, advised the State that it did not have the right to assert the
Confrontation Clause for Appellant.

            The
punishment phase continued with testimony from other witnesses.  Defense counsel then asked to recall
Detective Scott for the purpose of admitting Diedre's
statement.  The judge permitted Detective
Scott to be recalled but regarding the introduction of Diedre's
videotape statement, ruled as follows:

I'm going to rely on some basic principles of law which
are that the trial judge has some discretion in what he's going to allow in and
at the state it is now, we've gotten past what is relevant and now we're
pushing it even further beyond just the oral testimony to this videotape which
would get us even beyond that.  So I'm
not inclined to allow the videotape statement of Diedre Blackburn into
evidence.

 

            Based
on the court's ruling, defense counsel requested that the videotape statement,
Defendant's Exhibit No. 20, be made a part of the record for purposes of appeal.  He now argues that Diedre's
statement would have established he did not commit the two 2007 robberies and
he speculates that if Diedre's statement had been
introduced into evidence, "it is very doubtful [the jury] would have
assessed the punishment actually imposed."

            B.        Analysis

            As stated above, we utilize an
abuse of discretion standard to review the trial court's evidentiary
rulings.  Prystash, 3
S.W.3d at 527.  If the trial judge
was correct under any theory of law applicable to the case, we will uphold the
judge's decision.  Id.  Whether or not
evidence is relevant is a matter within the sound discretion of the trial
court.  Moreno v. State, 858 S.W.2d 453, 463 (Tex.Crim.App. 1993).  Furthermore, even relevant evidence may be
excluded if the probative value is substantially outweighed by considerations
of undue delay, or needless presentation of cumulative evidence.  Tex. R. Evid. 403. 

            With
those standards in mind, this Court has reviewed Diedre's
entire videotape statement in the context within which it was presented.  Given the status of the trial, particularly
the issues presented at the punishment phase of the trial in light of the
evidence already admitted, we cannot say that the trial court's decision to
exclude this statement, either on the basis of relevance or undue delay, was an
abuse of discretion.    

            Furthermore,
even assuming for the sake of argument that the trial court abused its
discretion in excluding the statement from evidence, we find the exclusion was
harmless.  In her statement, Diedre
implicates Appellant in all four robberies and claims to have driven him to all
four robberies.  Moreover, the defense
was allowed to distinguish the two sets of robberies by putting on evidence
through Herndon that the 2007 robberies were committed with weapons other than
a BB gun.  Consequently, we fail to see how exclusion of this
evidence harmed Appellant or prevented him from presenting a defensive theory during
the punishment phase of the trial.  

            Moreover,
Appellant's speculation on the degree of punishment assessed is without
merit.  Appellant received thirty years
punishment for two first degree felonies, each of which carries a maximum
penalty of ninety-nine years, or life, and a $10,000 fine.  Point of error two is overruled.

Conclusion

            Accordingly, the trial
court's judgment is affirmed.

 

                                                                                      Patrick A. Pirtle

                                                                                            Justice

 

 

Do not publish. 

 











[1]Tex. Penal Code Ann. § 29.03(a) and (b) (Vernon 2003).

 





[2]Relying
on Martinez v. State, 969 S.W.2d 497,
499 (Tex.App.--Austin 1998, pet. ref'd) (citing Martinez v. State, 924 S.W.2d 693, 698 (Tex.Crim.App. 1996)), the
State maintains that presentation of a multifarious point results in procedural
default.  By his reply brief, Appellant
contends his point of error is not multifarious.  Nevertheless, he references Whirty v. Grimes, No. 07-08-0394-CV, 2009
Tex.App. LEXIS (Tex.App.--Amarillo April 14, 2009, pet. denied) (citing Foster v. State, 101 S.W.3d 490, 499
(Tex.App.--Houston [1st Dist.] 2002, no pet.)), in which this Court recognized
that an appellate court may address a multifarious issue that is sufficiently
developed.  In the interest of judicial
economy and justice, we will address Appellant's various claims raised in point
of error one.  See Gallo v. State, 239 S.W.3d 757, 770 (Tex.Crim.App. 2007).  See
also Sterling v. State, 800 S.W.2d 513, 521 (Tex.Crim.App. 1990).   

 





[3]The
January 10, 2008, and January 30, 2008, robberies were of the same branch of
Bank of America.  

 





[4]Originally
appealed to the Third Court of Appeals, this appeal was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  Tex. Gov=t
Code Ann. ' 73.001 (Vernon 2005).  We are unaware of any conflict between
precedent of the Third Court of Appeals and that of this Court on any relevant
issue.  See Tex. R. App. P. 41.3.

 





[5]A
"deadly weapon" is a firearm or anything manifestly designed, made,
or adapted for the purpose of inflicting death or serious bodily injury; or
anything that in the manner of its use or intended use is capable of causing
death or serious bodily injury.   





[6]The
State asserts that Appellant waived his contention because his complaint on
appeal does not comport with his complaint at trial.  See Sorto v. State, 173 S.W.3d 469,
476 (Tex.Crim.App. 2005).  We
nevertheless will review Appellant's point.

 





[7]A
testimonial hearsay statement may not be admitted in evidence against an
accused unless the declarant is unavailable and the accused had a prior
opportunity to cross-examine the declarant. 
Crawford v.
Washington, 541 U.S. 36, 68 124 S.Ct. 1354, 158 L.Ed.2s 177 (2004).  Interrogations by law enforcement officers
fall in the class of testimonial hearsay.  See 541
U.S. at 53.  See also Gutierrez v. State, 150 S.W.3d 827, 830 (Tex.App.--Houston [14th
Dist.] 2004, no pet.).  The Texas Court of Criminal Appeals
has not addressed whether Crawford
applies when a jury determines the sentence in a non-capital case.  Stringer v. State, No. PD-1569-08, 2010 LEXIS 249, at *15
(Tex.Crim.App. 2010 April 14, 2010).