NO. 07-09-0031-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 16, 2010

_____

CHARLES BLACKBURN, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 277TH DISTRICT COURT OF WILLIAMSON COUNTY;

NO. 08-1008-K277; HONORABLE KEN ANDERSON, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty, Appellant, Charles Blackburn, Jr. was convicted by a jury of two counts of aggravated robbery, with an affirmative finding on use of a deadly weapon, a first degree felony.[1]  Punishment was assessed at thirty years confinement as to each count, with the sentences to be served concurrently.  Presenting two points

_____

[1]Tex. Penal Code Ann. § 29.03(a) and (b) (Vernon 2003).

of error, Appellant challenges his conviction and sentence. By his first point, he raises a multifarious argument[2] regarding whether the BB gun used in the robbery in question was a deadly weapon. Specifically, he questions the qualifications of the State's expert witness, alleges abuse of discretion by the trial court in overruling his objection to the admission of State's Exhibit No. 233, a website printout of Crosman Products, the BB gun manufacturer, and challenges admission of the State's expert witness's testimony as it relates to certain firing tests performed. By point of error two, which relates only to punishment, Appellant contends the trial court abused its discretion in denying the admission of his co-defendant's videotape statement because the denial deprived him of his constitutional right to present a defense. We affirm.

## Factual Background

On January 30, 2008, Appellant robbed the Bank of America in Round Rock, Texas. His co-defendant mother, Diedre Blackburn, who had an account at the bank, entered the bank at approximately 3:13 p.m. to make a deposit. While she was being waited on by a teller, Olivia Ortega, Appellant entered the bank, walked toward Ortega's window, pushed Diedre aside, and demanded money. Ortega complied in accordance with her training.

---

[2]Relying on *Martinez v. State*, 969 S.W.2d 497, 499 (Tex.App.--Austin 1998, pet. ref'd) (citing *Martinez v. State*, 924 S.W.2d 693, 698 (Tex.Crim.App. 1996)), the State maintains that presentation of a multifarious point results in procedural default. By his reply brief, Appellant contends his point of error is not multifarious. Nevertheless, he references *Whirty v. Grimes*, No. 07-08-0394-CV, 2009 Tex.App. LEXIS (Tex.App.--Amarillo April 14, 2009, pet. denied) (citing *Foster v. State*, 101 S.W.3d 490, 499 (Tex.App.--Houston [1st Dist.] 2002, no pet.)), in which this Court recognized that an appellate court may address a multifarious issue that is sufficiently developed. In the interest of judicial economy and justice, we will address Appellant's various claims raised in point of error one. *See Gallo v. State*, 239 S.W.3d 757, 770 (Tex.Crim.App. 2007). *See also Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App. 1990).

During the robbery, Appellant wore a hoody, a knit cap, and a bandana over his face, while exhibiting a weapon later discovered to be a BB gun. After the robbery, Appellant fled on foot, but he was seen by an assistant bank manager ducking behind a nearby truck. The bank manager wrote down the license plate of the truck, while other witnesses at a nearby business photographed the truck and its license plate with their cell phones.

Following the robbery, the bank manager asked Diedre to stay and give a statement. Diedre insisted, however, that she needed to leave for medical reasons. She left her contact information and proceeded toward her truck, which she had inconveniently parked away from the bank. When the assistant bank manager observed Diedre enter the same truck she had witnessed Appellant duck behind, she surmised that Diedre was involved in the robbery.

Officer Jim Weber responded to the aggravated robbery call when he spotted the suspected truck and confirmed the license plate. He radioed that he was in pursuit of the truck and backup officers were dispatched. Officer Weber followed the truck to a subdivision in Pflugerville, activated his patrol car lights, and stopped the vehicle near the house where Appellant and Diedre had been staying with friends. Due to the nature of the call, the stop was considered high risk and Officer Weber drew his weapon and issued commands to Appellant and Diedre. Notwithstanding their compliance with his commands, Officer Weber testified that Appellant was verbally aggressive and belligerent. Backup officers, detectives, and FBI agents arrived on the scene. In plain view inside the truck, the officers observed a hoody, black ski mask, bandana, green mesh bag, and tan gloves. Having determined probable cause to search the truck

3

existed, backup officers conducted a search and found an air pistol and a bag containing over $10,000 in cash.

Officer Donald D'Amour testified that Appellant was handcuffed and placed in his patrol car. Diedre was also handcuffed and taken to the police department where Detectives Shawn Scott and Jeff Hill interviewed her for approximately ninety minutes. Based on Diedre's interview and their investigation, Appellant was indicted for five counts of aggravated robbery committed in four different robberies, to wit: two counts on January 19, 2007; one count on December 1, 2007, one count on January 10, 2008, and one count for the Bank of America robbery on January 30, 2008.[3] The State decided to prosecute Appellant only for the two 2008 aggravated robberies. At the time of those robberies, Appellant was only sixteen years old; however, he was subsequently certified to be tried as an adult.

During the lengthy punishment phase, the State sought to prove that Appellant also committed the two 2007 robberies. Appellant theorized that he was innocent of the two extraneous robberies because those robberies were committed by someone exhibiting an actual firearm, while he only owned a BB gun. After weighing the evidence, the jury sentenced Appellant to thirty years confinement for each offense and this appeal followed.[4]

---

[3]The January 10, 2008, and January 30, 2008, robberies were of the same branch of Bank of America.

[4]Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. Tex. Gov't Code Ann. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* Tex. R. App. P. 41.3.

4

**Analysis**

## I.      Point of Error One

By his first point of error, Appellant challenges (1) the qualifications of Chris Herndon, the State's expert witness, (2) alleges error by the trial court in overruling his objection to Herndon's testimony regarding State's Exhibit No. 233, a website printout of Crosman Products, the BB gun manufacturer, and (3) questions the relevancy of tests performed by firing the BB gun into a watermelon and an unknown type of wood. Essentially, Appellant's complaints challenge the trial court's evidentiary rulings in relation to the jury's deadly weapon finding.

In reviewing a trial court's ruling on the admissibility of evidence we utilize an abuse of discretion standard.  *Prystash v. State*, 3 S.W.3d 522, 527 (Tex.Crim.App. 1999).  We will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g).

A deadly weapon is defined as a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.  Tex. Penal Code Ann. § 1.07(17)(A) and (B) (Vernon Supp. 2009).  The placement of the word "capable" is crucial to understanding the method of determining deadly-weapon status.  *Tucker v. State*, 274 S.W.3d 688, 691 (Tex.Crim.App. 2008). Serious bodily injury is bodily injury that creates a substantial risk of death or that

causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id.* at (46).

In determining whether an object used in the commission of an offense is a deadly weapon, the jury may consider all the surrounding facts, including the defendant's words and whether the victim feared death or serious bodily injury. *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App. 1983). *See Hernandez v. State*, 649 S.W.2d 720, 722 (Tex.App.–Amarillo 1983, no pet.). The State need not prove that the complainant actually sustained serious bodily injury for the alleged weapon to be a deadly weapon. *Jefferson v. State*, 974 S.W.2d 887, 892 (Tex.App.–Austin 1998, no pet.). In fact, wounds are not a necessary prerequisite for an object to be considered a deadly weapon. *Turner v. State*, 664 S.W.2d 86, 90 (Tex.Crim.App. 1983). Neither does the State have to show that the accused intended to cause serious bodily injury. *Lane v. State*, 111 S.W.3d 203, 210 (Tex.App.–Eastland 2003), *aff'd*, 151 S.W.3d 188 (Tex.Crim.App. 2004) (quoting *Clark v. State*, 886 S.W.2d 844, 845 (Tex.App.–Eastland 1994, no pet.). Either expert or lay testimony may be sufficient to support a deadly weapon finding by the jury. *English v. State*, 647 S.W.2d 667, 668-69 (Tex.Crim.App. 1983).

## A.   Chris Herndon's Qualifications

Appellant insists there is no showing that Investigator Chris Herndon was qualified as an expert during the guilt/innocence phase regarding whether a BB gun is a deadly weapon. Appellant concedes that Herndon was qualified as a firearms expert; however, he references Herndon's testimony that a BB gun is not a firearm and

deduces that Herndon, therefore, had no expertise to testify on compressed air guns. We do not agree.

Herndon testified that he was a peace officer since 1994 before becoming an investigator for the district attorney's office ten years earlier.  A police officer can be an expert witness with respect to whether a deadly weapon, other than a firearm, is used. *See generally Tucker*, 274 S.W.3d at 691-92 (finding police officer was qualified to testify whether a knife or key was used as a deadly weapon).  At trial, Appellant objected to Herndon's testimony on hearsay grounds; his complaint on appeal is that Herndon was not qualified to testify as an expert on compressed air pistols.  His complaint on appeal does not comport with his trial objection.  *See Mays v. State*, No. AP-75,924, 2010 Tex.Crim.App. LEXIS 480, at *62 (Tex.Crim.App. April 28, 2010) (citing *Guevara v. State*, 97 S.W.3d 579, 583 (Tex.Crim.App. 2003).  Consequently, his contention regarding Herndon's expertise is not preserved for appellate review.

### B. Crosman Products Website Printout

Early during Herndon's testimony, the State offered Exhibit No. 232, a receipt for a BB gun purchased for testing.  The gun was identical to the one used in the robberies. Defense counsel requested, and was permitted, an opportunity to take Herndon on voir dire regarding the purchase of the BB gun.  *See* Tex. R. Evid. 705(b).  After voir dire, defense counsel lodged a relevancy objection to Exhibit No. 232.  The trial court sustained the objection and disallowed introduction of the receipt.

When the State then offered Exhibit No. 233, a printout from the website of the BB gun manufacturer, Crosman Products, defense counsel objected "to hearsay as to

7

anything that might be in these documents."  Before the trial court ruled, the prosecutor asked Herndon if the company specifics had aided him in his testing and whether the exhibit would aid the jury in understanding his testimony.   After Herndon answered affirmatively, the State offered Exhibit No. 233 and defense counsel again objected on hearsay grounds.  This colloquy followed:

Court: He's an expert.  233 is admitted.

[Defense counsel]: May I take the witness on voir dire?

Court: You already did, and I already admitted it.

[Defense counsel]: Well, I'd like to take him on voir dire for purposes of this objection.

Court: But you already took him on voir dire, you made your objection, and I overruled it.

[Defense counsel]:  On a different issue, Judge.

* * *

Court:  Your previous objection was overruled, yes.

[Defense counsel]: May I take the witness on voir dire?

Court: Not to object to the same piece of evidence.

[Defense counsel]:  No, this is new evidence, Judge.

Court: I'm sorry. I thought 233 is the specifications from the company.

[Defense counsel]:  Yes, it is.

Court:  And I already admitted it.  You had already taken him on voir dire and made an objection, and I admitted it.

Rule 705(b) of the Texas Rules of Evidence is clear.  If a criminal defendant timely requests to conduct voir dire examination of an expert, the trial court shall permit

8

him to question the expert on the underlying facts or data upon which the opinion is based. *See* Tex. R. Evid. 705(b). *See also Alba v. State*, 905 S.W.2d 581, 587-88 (Tex.Crim.App. 1995). Rule 705 permits an abbreviated method of laying the groundwork before asking for an expert's opinion. *Id.* at 588. As noted by the Court of Criminal Appeals, "the focus of Rule 705(b) is to prevent the jury from hearing the underlying facts and data which might ultimately be ruled as inadmissible." *Id.*

Rule 705(b) is mandatory. *Id.* A trial court's denial of a timely and proper request constitutes error. *Id.* In such a case, a reviewing court is required to decide whether the trial court's error was so harmful as to require reversal.

Relying on *Alba*, the State maintains that Appellant's request was not timely. We disagree. In *Alba*, the defendant did not object until the "cat was already out of the bag." *Harris v. State*, 133 S.W.3d 760, 774 (Tex.App.--Texarkana 2004, pet. ref'd). In the underlying case, although the exhibit itself had already been admitted into evidence, neither the exhibit, nor the specifics from the exhibit, had been published to the jury when Appellant objected to the exhibit on hearsay grounds. The trial court's immediate and hasty ruling in labeling Herndon an expert and admitting Exhibit No. 233 effectively denied Appellant the opportunity to request voir dire examination before admission of the exhibit. Under the scenario presented in this record, fairness dictates that we find Appellant's request was timely, and the trial court erred in denying him the opportunity to conduct a second voir dire examination of Herndon on this new piece of evidence. Even though we have found this decision to be error, we must now determine the effect of that error. Error in denying voir dire under Rule 705(b) constitutes non-constitutional error that is subject to harm analysis. *Alba,* 905 S.W.2d at 588.

9

Non-constitutional error must be disregarded unless it affected the substantial rights of the accused. Tex. R. App. P. 44.2(b). In other words, a conviction should not be reversed unless a reviewing court, after examining the record as a whole, has a fair assurance that the error did not influence the jury or had but a slight effect. *McDonald v. State*, 179 S.W.3d 571, 578 (Tex.Crim.App. 2005).

Here, the State sought to use Herndon to testify regarding whether a BB gun is a deadly weapon and Herndon testified as much. However, Herndon was not the only witness to testify that the weapon used was a deadly weapon. During the State's case-in-chief, Bank teller Charity Childress also testified that on January 10, 2008, when she was robbed, the suspect entered the bank and pointed the gun at her face, placing her in fear of death or serious bodily injury. Furthermore, Bank teller Olivia Ortega, who was pregnant at the time of the January 30, 2008 robbery, testified that the suspect pointed the gun at her head, causing her to fear for her life and the health of her unborn baby.

Either expert testimony or lay testimony may be sufficient to support a deadly weapon finding by a jury. *See English*, 647 S.W.2d at 669. *See also Quincy v. State*, 304 S.W.3d 489, 500 n.10 (Tex.App.--Amarillo 2009, no pet.). The unobjected-to testimony of Childress and Ortega regarding their fear of death or serious bodily injury from having a BB gun pointed at them is sufficient to support a deadly weapon finding. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2009).[5] *See also Adame v. State*, 69 S.W.3d 581, 581-82 (Tex.Crim.App. 2002). Therefore, notwithstanding the

---

[5]A "deadly weapon" is a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

trial court's erroneous denial of Appellant's request to conduct voir dire examination of Herndon and the subsequent admission into evidence of the Crosman website printout, we have a fair assurance the error did not influence the jury or had but a slight effect and does not require reversal of Appellant's conviction.

## C.    Relevancy of Tests Performed by Herndon

Herndon also testified that he test fired the BB gun used in the robberies into a watermelon and an undetermined type of wood.  Appellant argued at trial and argues here that the tests were not relevant, and testimony regarding them should have been excluded.  Herndon explained that he used watermelon and wood as mediums which the average person could understand.  Where tests showed that a projectile discharged by the BB gun traveled a median of 263 feet per second, he opined that pointing the BB gun into someone's face could penetrate the eye and cause serious bodily injury.  Based on his tests and the underlying data, Herndon was able to form an opinion that that the BB gun was capable of causing death or serious bodily injury.  Although the State did not establish whether the BB gun was loaded at the time of the robberies, the Texas Court of Criminal Appeals has held that is not significant in a deadly weapon analysis.  *Adame*, 69 S.W.3d at 582 (finding that evidence that appellant displayed a BB gun to convenience store clerk and that the gun was capable of causing serious bodily injury if pointed and fired at someone was sufficient to support jury's deadly weapon finding).

Because the crux of Appellant's multifarious point is a challenge to the jury's deadly weapon finding, albeit argued via evidentiary rulings, the State was required to

show that the use or intended use of the BB gun was *capable* of causing death or serious bodily injury. *Tucker*, 274 S.W.3d at 691*.* Charity Childers, the Bank of America teller who was robbed on January 10, 2008, testified that the suspect pointed a gun at her face and she was in fear of death or serious bodily injury. State's Exhibit No. 2 showed a suspect holding a gun similar to Appellant's BB gun during one of the 2008 robberies in very close proximity to a bank teller's head. Whether the BB gun was loaded is not significant. *Adame*, 69 S.W.3d at 582. *Cf. Mosley v. State*, 545 S.W.2d 144, 145-46 (Tex.Crim.App. 1976) (deciding whether an air pistol, as used, was a deadly weapon under the newly enacted definition of "deadly weapon"). *But see Mosely*, 545 S.W.2d at 146 (op. on reh'g) (addressing the State's concern that the opinion on original submission held that an air pistol could never be a deadly weapon and concluding that the original opinion did not attempt to exclude all types of air guns from the definition of a firearm). Because the evidence supports that Appellant's BB gun was *capable* of causing serious bodily injury, the jury was justified in finding that Appellant used a deadly weapon during the two 2008 robberies. We conclude the challenged evidentiary rulings of the trial court fell within the zone of reasonable disagreement and we will not disturb those rulings. *See Resendiz v. State*, 112 S.W.3d 541, 544 (Tex.Crim.App. 2003). Point of error one is overruled.

## II. Point of Error Two

By his second point of error, Appellant again challenges an evidentiary ruling of the trial court. Here, he maintains the trial court erred in refusing his request to admit the videotape statement of his co-defendant, Diedre, because the statement would have

dispelled allegations that he was involved in the extraneous robberies, thereby depriving him of his Sixth Amendment right to present a defense.[6]

## A.    Background

Following her arrest, Diedre gave a videotaped statement to Detective Scott that was about an hour and a half long.  In that statement she implicated Appellant in all four robberies originally charged in the indictment, but she stated that he "never had a real gun."  During the punishment phase of trial, firearms expert Herndon testified that the January 19, 2007 robbery was committed with an actual firearm, a Sig Sauer P226.  He also testified that the December 1, 2007 robbery was committed with either a Sig Sauer or a Heckler and Kock compact USP, both actual firearms.  Appellant contends that introduction of the videotape would have promoted his defense that he did not commit the two 2007 robberies because it would have established that he did not own a firearm like the ones used in those robberies.

The videotape statement in question was not admitted into evidence during the guilt/innocence phase of the trial; however, at the punishment phase, during Appellant's cross-examination of Detective Scott, the trial court attempted to limit Appellant's use of that statement.  At the time, defense counsel argued that the State's questioning of Detective Scott had opened the door to the admission of the statement and that the statement was admissible pursuant to Appellant's Sixth Amendment right of confrontation.

---

[6]The State asserts that Appellant waived his contention because his complaint on appeal does not comport with his complaint at trial.  *See Sorto v. State*, 173 S.W.3d 469, 476 (Tex.Crim.App. 2005).  We nevertheless will review Appellant's point.

13

The State's line of questioning during Detective Scott's punishment phase testimony had focused on the detective's decision to charge Appellant with all four robberies. During cross-examination, defense counsel asked Detective Scott the following:

> Q. So the evidence you got from Diedre Blackburn was that she drove [Appellant] to each robbery, correct?

He responded, "That is correct." After a follow-up question, the following colloquy ensued:

> [Prosecutor]: Your Honor, I'm going to object to any questioning about exactly what Diedre Blackburn said. Counsel knows that violates the constitutional right of the defendant.
>
> [Defense Counsel]: I'm sorry. I don't understand the objection.
>
> [Prosecutor]: I'm going to object to any Crawford violations propounded by the defense to this witness.
>
> [Defense Counsel]: Your Honor, it's not offered for the truth of the matter. We don't think it's true. It's offered to show how this detective conducted his investigation.

The judge asked everyone to approach for an on-the-record bench conference. After he advised the prosecutor that it was not up to him to defend the defendant's constitutional rights, the State again expressed *Crawford*[7] concerns if the defense was

---

[7]A testimonial hearsay statement may not be admitted in evidence against an accused unless the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 124 S.Ct. 1354, 158 L.Ed.2s 177 (2004). Interrogations by law enforcement officers fall in the class of testimonial hearsay. *See* 541 U.S. at 53. *See also Gutierrez v. State*, 150 S.W.3d 827, 830 (Tex.App.--Houston [14th Dist.] 2004, no pet.). The Texas Court of Criminal Appeals has not addressed whether *Crawford* applies when a jury determines the sentence in a non-capital case. *Stringer v. State*, No. PD-1569-08, 2010 LEXIS 249, at *15 (Tex.Crim.App. 2010 April 14, 2010).

allowed to admit certain portions of Diedre's statement without the State being allowed to introduce the remainder of the statement. The judge expressed frustration and commented that the quality of Detective Scott's investigation was not a relevant punishment issue and advised the parties to continue with the punishment phase. He asked defense counsel if Diedre's statement was the "avenue he wanted to go down." He replied, "Yes, Judge. That's why I'm doing it."

Defense counsel was then permitted to question Detective Scott about his interrogation with Diedre. Defense counsel wanted to show that Diedre had been badgered into admitting that Appellant had been involved in all four robberies. The State made a relevancy objection to defense counsel attempting to challenge the voluntariness of Diedre's statement, which the trial court sustained. Outside the jury's presence, the State made another *Crawford* objection. The judge, again expressing frustration, advised the State that it did not have the right to assert the Confrontation Clause for Appellant.

The punishment phase continued with testimony from other witnesses. Defense counsel then asked to recall Detective Scott for the purpose of admitting Diedre's statement. The judge permitted Detective Scott to be recalled but regarding the introduction of Diedre's videotape statement, ruled as follows:

> I'm going to rely on some basic principles of law which are that the trial judge has some discretion in what he's going to allow in and at the state it is now, we've gotten past what is relevant and now we're pushing it even further beyond just the oral testimony to this videotape which would get us even beyond that. So I'm not inclined to allow the videotape statement of Diedre Blackburn into evidence.

15

Based on the court's ruling, defense counsel requested that the videotape statement, Defendant's Exhibit No. 20, be made a part of the record for purposes of appeal. He now argues that Diedre's statement would have established he did not commit the two 2007 robberies and he speculates that if Diedre's statement had been introduced into evidence, "it is very doubtful [the jury] would have assessed the punishment actually imposed."

## B.     Analysis

As stated above, we utilize an abuse of discretion standard to review the trial court's evidentiary rulings. *Prystash*, 3 S.W.3d at 527. If the trial judge was correct under any theory of law applicable to the case, we will uphold the judge's decision. *Id.* Whether or not evidence is relevant is a matter within the sound discretion of the trial court. *Moreno v. State,* 858 S.W.2d 453, 463 (Tex.Crim.App. 1993). Furthermore, even relevant evidence may be excluded if the probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403.

With those standards in mind, this Court has reviewed Diedre's entire videotape statement in the context within which it was presented. Given the status of the trial, particularly the issues presented at the punishment phase of the trial in light of the evidence already admitted, we cannot say that the trial court's decision to exclude this statement, either on the basis of relevance or undue delay, was an abuse of discretion.

Furthermore, even assuming for the sake of argument that the trial court abused its discretion in excluding the statement from evidence, we find the exclusion was

harmless. In her statement, Diedre implicates Appellant in all four robberies and claims to have driven him to all four robberies. Moreover, the defense was allowed to distinguish the two sets of robberies by putting on evidence through Herndon that the 2007 robberies were committed with weapons other than a BB gun. Consequently, we fail to see how exclusion of this evidence harmed Appellant or prevented him from presenting a defensive theory during the punishment phase of the trial.

Moreover, Appellant's speculation on the degree of punishment assessed is without merit. Appellant received thirty years punishment for two first degree felonies, each of which carries a maximum penalty of ninety-nine years, or life, and a $10,000 fine. Point of error two is overruled.

## Conclusion

Accordingly, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.