Opinion Issued October 27, 2005
















In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00522-CR
____________

DAMON GERROD SHEPARD, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 21st District Court
Washington County, Texas
Trial Court Cause No. 13,681
 

 
 
MEMORANDUM OPINION
             A jury found appellant, Damon Gerrod Shepard, guilty of the offense of
murder


 and assessed his punishment at confinement for 20 years. In his sole point
of error, appellant contends that the trial court erred in denying his motions for a
mistrial and a new trial. We affirm. 
Procedural Background On March 26, 2004, the fourth day of the guilt phase of appellant’s trial,
outside the presence of the jury, appellant’s counsel informed the trial court that a
juror, whose name was unknown at that time, had conversed with an unauthorized
person about the case. Appellant had informed his counsel that morning that a man
by the name of Eurie Walker had told him that Walker’s sister, Regina, while at the
Optimum Fitness Club, overhead a conversation involving someone whom she
thought to be a juror on the instant case. Appellant’s counsel explained that Walker
heard this juror state that she was sitting as a juror on a murder case that involved a
person who shot someone at a club in Old Washington. Walker also advised that she
heard the juror state that, in her mind, appellant was already guilty and that, if she
could, she would give him death by lethal injection. At that time, the trial court stated
that it did not “want to start tampering with the jury [sic] or getting into their mind at
this point and let them know that something might be suspicious with their conduct.” 
The trial court then stated that it would rather “pursue it from the other end,” and told
appellant “if you can find [Regina Walker] and bring her up here. . . we’ll find out
what she knows about it.” The trial court further stated that, “even at the end of the
trial, if we need to talk to our jurors then we can do it” but it did not “want to start
bringing jurors out here individually and talking to them.” The trial resumed. 
          That afternoon, outside the presence of the jury, after being sworn and placed
under oath, Regina Walker testified that, while receiving physical therapy at the
Optimum Fitness Club, on March 22, 2004, at about 4:30 p.m., a juror, whom Walker
believed to be Karen Schultz, entered the room and spoke with another woman. 
According to Walker, Schultz told the other woman that she would need to take a
week off from work because the trial would probably take that long. The other
woman asked, “What do you think they’re probably going to give him,” and Schultz
responded, “Probably between 5 years to 99 years.” The woman then asked, “Well,
what do you think?,” and Schultz replied, “If it were up to me, . . . I would pick death
row.” After the trial court determined that Schultz was, in fact, on the jury panel, the
State noted that Schultz was the alternate juror. In response to the State’s
questioning, Walker again stated that she heard Schultz say that, “if it was left up to
[Schultz,] she was probably going to give him 5 to 99 years, but she will pick death
row if it’s one of the options.” In response to appellant’s questioning, Walker stated
that she did not hear Schultz say the name of the person on trial but did hear her say
that she was involved in “the trial that’s going on.” 
          After the trial court excused Walker, appellant moved for a mistrial, asserting
that he was prevented from “having full faith in this particular jury being able to come
back with a true verdict” because the alternate juror “told and talked about this case
while with someone else who was not on this particular jury,” “has concluded in her
mind . . . about the punishment,” and “may have violated” the trial court’s rule “not
to discuss the case with anyone outside of the deliberation room.” The trial court
denied appellant’s motion for mistrial. The trial then continued. 
            After the State and appellant made their closing arguments and after the trial
court sent the jury to the jury room for deliberations, outside the presence of the jury,
the trial court questioned Schultz, the alternate juror. She stated that she was not
aware that she had been the alternate until after the presentation of the evidence,
when the trial court informed her of that fact. Schultz, an employee at the Optimum
Fitness Club, explained that, after the jury had been selected, she discussed with
Donna Daniels, her supervisor, the fact that she needed time off from work in order
to sit on the jury. She recalled speaking to Daniels in Daniels’s office and that the
secretary was the only other person in the room. She stated that she never expressed
any opinion to Daniels as to what evidence was going to be presented at the trial. She
did not recall, nor did she think that she told Daniels that the accused had been
eligible for a punishment ranging “from 5 to 99 years in prison and/or life.” She also
stated that she did not tell Daniels that the accused deserved a punishment of lethal
injection or that the accused was already guilty in her mind. Thereafter, the trial court
discharged Schultz because she was the alternate juror and was no longer needed. 
          After the jury found appellant guilty, he filed a motion for new trial, which was
denied by operation of law. In his motion, appellant asserted that he was entitled to
a new trial because, among other things, the jury “engaged in misconduct [such] that
[appellant] did not receive a fair and impartial trial.” 
Standard of Review
          We review the denial of a motion for mistrial under an abuse of discretion
standard. Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). A mistrial
is “a device used to halt trial proceedings when error is so prejudicial that expenditure
of further time and expense would be wasteful and futile.” Ladd v. State, 3 S.W.3d
547, 567 (Tex. Crim. App. 1999). We review the denial of a motion for new trial
also under an abuse of discretion standard. Rent v. State, 982 S.W.2d 382, 384 (Tex.
Crim. App. 1998). A new trial shall be granted to an accused when the court finds
that the jury has engaged in such misconduct that the accused has not received a fair
and impartial trial. Tex. R. App. P. 21.3(g). A movant for a new trial based on jury
misconduct must prove that (1) misconduct occurred, and (2) the misconduct resulted
in harm to the movant. Garza v. State, 630 S.W.2d 272, 274 (Tex. Crim. App. 1981). 
Jury Misconduct
          Appellant argues that the “trial court erred in denying a motion for mistrial and
subsequent motion for new trial based on jury misconduct” because an alternate
“juror had discussed the case, and had made prejudicial statements regarding the
accused[’s] guilt before the presentation of any evidence.” Appellant asserts that the
juror had “violated the Court’s own instructions regarding the case, prior to its
conclusion” and, “[o]n the day of trial, she told unauthorized individuals, that she had
already concluded that the defendant should get the death penalty, which was not an
option.” 
          Article 36.22 of the Code of Criminal Procedure provides, in relevant part, that
“[n]o person shall be permitted to converse with a juror about the case on trial except
in the presence and by the permission of the trial court.” Tex. Code. Crim. Proc.
Ann. art. 36.22 (Vernon 1981). The purpose of article 36.22 is to prevent an outsider
from saying something that might influence a juror. Gomez v. State, 991 S.W.2d 870,
872 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d) (op.on reh’g). An appellant has
the burden of proving an allegation of juror misconduct. Hughes v. State, 24 S.W.3d
833, 842 (Tex. Crim. App. 2000). When a juror converses with an unauthorized
person about the case, “injury to the accused is presumed,” and a mistrial or new trial
may be warranted. Quinn v. State, 958 S.W.2d 395, 401 (Tex. Crim. App. 1997);
Robinson v. State, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991); see also Tex. Code
Crim. Proc. Ann. art. 36.22. However, the State may rebut this presumption of harm
by showing that the case was not discussed or nothing prejudicial to the accused was
said. Alba v. State, 905 S.W.2d 581, 587 (Tex. Crim. App. 1995); Robinson, 851
S.W.2d at 230. Examples of methods proving that there has been no injury include
testimony by the juror that she did not tell any other jurors about the statement or that
the statement would not influence the juror in reaching a verdict. Quinn, 958 S.W.2d
at 402; Robinson, 851 S.W.2d at 230; Thomas v. State, 699 S.W.2d 845, 853 (Tex.
Crim. App. 1985). Testimony from the juror involved in the impermissible
conversation is enough evidence to support a trial court’s ruling that the State
sufficiently rebutted the presumption of injury. Quinn, 958 S.W.2d at 402. We defer
to the trial court’s resolution of historical facts and its determinations concerning
credibility and demeanor, and we view the evidence in the light most favorable to the
trial court’s rulings. Id. at 401–02. Where there is conflicting evidence on an issue
of fact as to jury misconduct, the trial judge determines the issue, and there is no
abuse of discretion in overruling the motion for new trial. Lewis v. State, 911 S.W.2d
1, 7 (Tex. Crim. App. 1995) (quoting Thomas, 699 S.W.2d 845, 854).
          Furthermore, where a sitting juror makes statements outside of deliberations
that indicate bias or partiality, such bias or partiality can constitute jury misconduct
that prohibits the accused from receiving a fair and impartial trial. Granados v. State,
85 S.W.3d 217, 235 (Tex. Crim. App. 2002). Thus, “although it defies common sense
and human nature to require that a juror have no impressions or opinions until the
judge sends the jury to deliberations,” where a juror’s statements or conduct raises a
question as to whether she is biased, “an inquiry is appropriate to determine the
juror’s intent when making the statement.” Quinn, 958 S.W.2d at 403. 
          During the trial, the trial court allowed both the State and appellant to question
Walker as to the alleged unauthorized conversation that occurred between Schultz
and Daniels at the Optimum Fitness Club. At that point, the State also brought to the
trial court’s attention that Schultz was an alternate juror. At the end of the
presentation of evidence and closing arguments and after the trial court sent the jury
to deliberate, the trial court and attorneys questioned Schultz regarding her alleged
statements. Schultz acknowledged that she told Daniels that she needed time off from
work because she was sitting on the jury in this case. However, the record shows
that, in response to appellant’s counsel’s questions, Schultz stated that she never
expressed any opinion to Daniels as to what evidence was going to be presented at
the trial since she “had no clue.” Schultz also testified that she did not recall telling
Daniels that the accused had been eligible for a punishment ranging “from 5 to 99
years in prison and/or life” or that the accused deserved a punishment of lethal
injection. Schultz also denied telling Daniels that the accused was already guilty in
her mind before the presentation of the evidence. At this point, the judge discharged
Schultz because she was the alternate juror. 
          We review the entire record for sufficient evidence to support the ruling, giving
great deference to the trial judge’s ability to observe demeanor and tone of voice. 
Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). Here, the trial court
was in a position to observe both Walker’s and Schultz’s testimony. Schultz’s
testimony that she never expressed to Daniels an opinion regarding guilt or
punishment contradicted that of Walker’s and rebutted the presumption of injury to
appellant. We also note that there is no evidence in the record that Schultz discussed
any aspect of her conversation with Daniels with any of the other jurors. Moreover,
as the alternate juror, Schultz was removed from the jury pool at the close of
testimony and did not ultimately participate in the deliberations to reach the verdict
in this case. Accordingly, on this record, viewing the evidence in the light most
favorable to the trial court’s rulings, we cannot say that the trial court abused its
discretion in denying appellant’s motions for a mistrial or a new trial. 
          We overrule appellant’s sole point of error.
 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists Justices Nuchia, Jennings and Higley.
 
Do not publish. Tex. R. App. P. 47.2(b).