# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00266-CR

**Clifton Sivad Montague, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 70535, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Clifton Sivad Montague guilty of murder, found an enhancement paragraph to be true, and assessed punishment at life imprisonment. *See* Tex. Penal Code § 19.02. In his first point of error, Montague contends that the trial court abused its discretion when it admitted ballistics evidence from an expert witness without first granting Montague his requested hearing on the admissibility of such evidence. In his second point of error, Montague contends that the trial court abused its discretion by allowing a witness to testify electronically over Montague's objection. We will affirm the trial court's judgment of conviction.

## BACKGROUND[1]

Laterrance Deshuan Newsom was found shot to death on the floor of Montague's apartment in Killeen. Montague's roommate and some of his neighbors heard the gunshots. Moments

---

[1] The facts recited herein are taken from the testimony and exhibits presented at trial.

after the shooting, Montague approached Trina Ware and her friend, who lived nearby. Montague told Ware that he had shot someone and handed her a gun, which Ware threw over a fence. Montague later admitted to Tonika Willis that he had shot Newsom.

Police recovered bullets and spent shell casings from the apartment and interviewed witnesses. Montague was eventually arrested and charged with murder. He was convicted and sentenced, and this appeal followed.

## DISCUSSION

*Expert testimony*

At trial, the State called Calvin Story, a forensic firearms examiner with the Texas Department of Public Safety Crime Lab. Outside the presence of the jury, the trial court and the attorneys addressed Montague's previously filed motion to suppress ballistics evidence and whether Montague should be granted a hearing to determine the admissibility of the State's expert witness's testimony. In his motion, Montague had challenged the admissibility of the State's ballistics evidence under Texas Rule of Evidence 702, which governs the admission of expert testimony. The State argued before the trial court that the court had no obligation to conduct a hearing on the admissibility of the ballistics evidence because such evidence "is well settled and admissible." The trial court allowed the expert witness to testify, explaining its decision as follows:

> The Court is going—this particular examiner I believe has testified in this court before and the—on other occasions, and I think that defense can properly challenge whatever this witness has to say. And then I think it's going to be up to the jury to figure out whether or not they want to put whatever weight and credibility to this witness.

2

In his first point of error, Montague contends that the trial court abused its discretion by admitting Story's testimony without first granting Montague his requested hearing on the admissibility of the testimony. We review the admission of expert testimony for an abuse of discretion. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010).

In a criminal case, upon the request of the defendant, the trial court must conduct a "gatekeeping" hearing outside the presence of the jury "to determine whether scientific evidence is sufficiently reliable and relevant to help the jury in reaching an accurate result." *Id.* at 273 (footnotes omitted); *see* Tex. R. Evid. 705(b) ("Before an expert states an opinion or discloses the underlying facts or data, an adverse party in a . . . criminal case must . . . be permitted to examine the expert about the underlying facts or data. This examination must take place outside the jury's hearing."). "Because Rule 705(b) is mandatory, a trial judge's denial of a timely and proper motion for such hearing would constitute error." *Alba v. State*, 905 S.W.2d 581, 588 (Tex. Crim. App. 1995).

We will assume, without deciding, that Montague made a timely and proper request for a hearing on the admissibility of Story's testimony and that the trial court erred by admitting Story's testimony without conducting the requested hearing. We will therefore consider whether this error is reversible. *See id.* ("In such a case, a reviewing court would then be required to decide whether the trial judge's error was so harmful as to require a reversal."). Because such error is not constitutional, we will reverse the trial court's judgment on this basis only if the error affected Montague's substantial rights. *See* Tex. R. App. P. 44.2(b); *Trevino v. State*, No. 04-12-00840-CR, 2014 WL 3518098, at *2 (Tex. App.—San Antonio July 16, 2014, no pet.) (mem. op., not designated for publication) ("Because the error is not constitutional, we will only reverse if it affected

3

Trevino's substantial rights; otherwise, the error must be disregarded."); *see also Clark v. State*, No. 10-15-00022-CR, 2015 WL 5949338, at *4 (Tex. App.—Waco Oct. 8, 2015, pet. filed) (mem. op., not designated for publication) (stating error in denying Rule 705(b) hearing is reviewed under Rule 44.2(b)); *Meier v. State*, No. 05-08-00486-CR, 2009 WL 765490, at *8 (Tex. App.—Dallas Mar. 25, 2009, no pet.) (not designated for publication) (same); *Ghahremani v. State*, No. 14-06-00729-CR, 2007 WL 3146723, at *8 (Tex. App.—Houston [14th Dist.] Oct. 30, 2007, pet. ref'd) (mem. op., not designated for publication) (same). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but slight effect." *Campbell v. State*, 382 S.W.3d 545, 553 (Tex. App.—Austin 2012, no pet.).

We will conclude that the trial court's error did not affect Montague's substantial rights if we determine that the State's expert testimony was in fact reliable. *See Jackson v. State*, 17 S.W.3d 664, 672 (Tex. Crim. App. 2000) ("[W]e hold that in this case the error was harmless because the State's DNA evidence was in fact reliable."); *Johnson v. State*, No. 11-08-00243-CR, 2010 WL 2803015, at *2 (Tex. App.—Eastland July 15, 2010, pet. ref'd) (mem. op., not designated for publication) ("Following *Jackson*, we hold that any error in failing to conduct a more thorough *Kelly–Daubert* hearing outside the jury's presence was harmless because the HGN evidence was shown to be reliable and admissible."). Here, Story testified that seven bullets recovered from the crime scene were all fired from the same gun. Story also testified that eleven casings recovered from

the scene were all fired from the same gun. Story testified that no gun was submitted to him for analysis and that, without the weapon, he was unable to determine whether the bullets were fired from the same gun as the casings.

Story also explained to the jury how markings are made on bullets and casings and the techniques and equipment he used in performing his analysis. According to Story's testimony, the science behind his methods originated in the 1920s and has been used in courts since then. In addition, Story testified that he has worked in his field for about 40 years and that he has testified around 500 times as an expert witness on firearms and tool-mark analysis.

We conclude that Story's testimony was sufficiently reliable. It was undisputed that Story had testified hundreds of times concerning ballistics evidence. *See Ramey v. State*, AP-75,678, 2009 WL 335276, at *8 (Tex. Crim. App. Feb. 11, 2009) (not designated for publication) (noting, in rejecting appellant's challenge to expert testimony, that expert had testified as ballistics expert many times). Moreover, expert ballistics testimony has long been allowed by courts. *See id.* at 9 ("We have recognized that the underlying theory of tool-mark identification could be reliable for identifying fired bullets from individual firearms."); *Mays v. State*, 563 S.W.2d 260, 263 (Tex. Crim. App. 1978) (noting that court of criminal appeals has long allowed expert ballistics testimony). Story carefully explained the theory and techniques of his field of expertise and was subject to cross-examination by Montague's counsel.

Moreover, because the gun used in the crime was not recovered, Story did not testify that the ballistics evidence he examined related to Montague. Rather, he merely concluded that the bullets and casings originated from one gun, in effect negating any theory that more than one

5

weapon was used. Because Story's testimony did not implicate Montague, it could not have had "a substantial and injurious effect or influence in determining the jury's verdict" and therefore did not affect Montague's substantial rights. *See Schmutz*, 440 S.W.3d at 39.

Because the underlying theory of tool-mark identification is generally reliable and because Story's testimony did not implicate Montague in the murder, we conclude that any error the trial court may have committed in admitting Story's testimony without a prior hearing was harmless. Accordingly, we overrule Montague's first point of error.

### *Electronic testimony*

In his second point of error, Montague contends that the trial court abused its discretion by allowing a pregnant witness to testify electronically over Montague's objection. *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996) ("As an appellate court we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard.").

At a pre-trial hearing, the State informed the trial court that one of the State's witnesses, Trina Ware, was pregnant and living in New York. According to the State, Ware's doctor had instructed her not to travel. The State then proposed that Ware testify remotely by electronic means that the State characterized as "a glorified Skype." Montague opposed this arrangement and filed a motion to suppress Ware's testimony on Confrontation Clause grounds.

During the pre-trial hearing, Montague informed his attorney that he did not want to wait in jail for six months until Ware had her baby and was able to travel again. Montague's attorney then made the following statement to the court:

6

I addressed to my client that if you grant our suppression, he's got to wait six months to get his trial? And he very emphatically—he wants his trial now. So in effect my client is waiving my efforts to suppress that and we are now acceptable to the electronic presentation if that's all that's available.

It appears it is. End of story.

Montague's attorney went on to discuss the scheduling of another witness's testimony, referring to that issue as "a lot more important" than the dispute over Ware's remote testimony.

Later in the hearing, the trial court stated, "Now, as far as the technology for [Ware], defense have indicated they don't have any problem then with proceeding with that." Montague's attorney did not contradict that assertion. However, later in the hearing, Montague's attorney asked the trial court to rule on his motion to suppress Ware's testimony. The trial court asked, "I thought you told me that you were going to abandon your motion to suppress that and that you all, your client wanted the trial date, therefore you were willing to do that?" Montague's attorney responded, "That is correct." At that point, Montague indicated that he was confused by this discussion, so the trial court explained to Montague that his trial would be postponed for several months if Ware was not allowed to testify remotely. The court stated, "Your choice is wait until she has a baby, or force the trial to come. Your lawyer has indicated you wanted to have your trial. You're ready for it. You don't want to sit in jail and wait for five months." Neither Montague nor his attorney contradicted this statement, and the trial court went on to explain that the case would proceed to trial.

At trial, Montague renewed his objection to Ware's electronic testimony. According to Montague's counsel, a letter from Ware's physician indicated that the concern over Ware traveling was a result of Ware's mental health history. Montague stated that the defense had previously

believed that the physician's advice not to travel arose from Ware's "physical" condition, not "the space between her ears." Montague also mentioned general concerns about the inadequacies of remote testimony. The trial court then stated that it was the court's understanding that Montague had previously indicated "that you all would be willing to let [Ware] testify telephonically or electronically because your client and you had asked initially for a continuance and your client was opposed to that." The court further explained to Montague's counsel, "you indicated to the Court that you would agree to proceed with her testimony being electronic and upon that proof [of Ware's pregnancy]."

Ware then testified remotely outside the presence of the jury. Ware explained that she was pregnant, that she suffered from several mental health issues, and that her physician had advised her not to travel more than 70 miles (the distance required for Ware to obtain medical care). According to Ware, her doctor was concerned that Ware could go into pre-term labor if she traveled farther. At the conclusion of Ware's testimony, the trial court decided to allow Ware to testify electronically before the jury. The court explained its decision as follows:

> I'm going to find that this witness is medically unable to travel, based on her testimony and the doctor's statement as well.
>
> And regarding the fact that she's just been hospitalized a week or so ago, has medical issues and with the worries about her being able to safely deliver, I think that it is not a good idea for her to travel in accordance with her testimony and the doctor's testimony. So I'll permit her to testify electronically.

Appearing electronically, Ware then testified in front of the jury that on the night of the murder Montague told her that he had shot someone and had handed her a gun.

8

The State contends that, because Montague agreed at the pre-trial hearing to go to trial and allow Ware to testify electronically, Montague invited any error the trial court may have committed in allowing Ware to testify and is estopped from arguing on appeal that his Confrontation Clause rights were violated. Assuming without deciding that Montague is not estopped from raising his Confrontation Clause objection and has preserved it for appellate review, we conclude that the trial court did not abuse its discretion by allowing Ware to testify remotely.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The principal concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Jessop v. State*, 368 S.W.3d 653, 679–80 (Tex. App.—Austin 2012, no pet.) (citing *Maryland v. Craig*, 497 U.S. 836, 845 (1990)). However, the right to confrontation is not absolute. *See Craig*, 497 U.S. at 848; *Horn v. Quarterman*, 508 F.3d 306, 317 (5th Cir. 2007) ("[G]iven the trial court's efforts to confirm Birk's illness and inability to travel and the care with which the other aspects of Horn's confrontation rights were preserved, we cannot say that the decision to permit Birk to testify via two-way closed-circuit television constituted an unreasonable application of established federal law."); *United States v. Gigante*, 166 F.3d 75, 81–82 (2d Cir. 1999) (stating that "two-way closed-circuit television testimony does not necessarily violate the Sixth Amendment" and holding that trial court did not abuse its discretion in allowing witness to testify because witness's fatal illness and participation in witness protection program "satisfy the exceptional circumstances requirement").

9

Texas courts have allowed witnesses to testify electronically when the witness was seriously ill, a child, or on active military duty in another country. *See Gonzales v. State*, 818 S.W.2d 756, 764 (Tex. Crim. App. 1991) (holding trial court did not deny appellant his constitutional rights by allowing child witness to testify by two-way closed-circuit system); *Rivera v. State*, 381 S.W.3d 710, 713 (Tex. App.—Beaumont 2012, pet. ref'd) ("We conclude that under the circumstances, the preference for having witnesses testify in the courtroom must give way to the practical considerations involving Taylor's military obligation that made his physical presence impractical."); *Paul v. State*, 419 S.W.3d 446, 459 (Tex. App.—Tyler 2012, pet. ref'd) ("Jordan's serious health situation was an exceptional circumstance that warranted permitting her testimony by a computer video conferencing system."); *Stevens v. State*, 234 S.W.3d 748, 782 (Tex. App.—Fort Worth 2007, no pet.) ("Ward's tenuous health situation—documented by letters from his treating cardiologist—was an exceptional circumstance that warranted permitting his testimony by two-way closed circuit television."). At least one court has held that allowing a pregnant witness with a risk of miscarriage to testify by means of a two-way conferencing system did not violate the defendant's Sixth Amendment rights. *See Acevedo v. State*, No. 05-08-00839-CR, 2009 WL 3353625, at *8 (Tex. App.—Dallas Oct. 20, 2009, pet. ref'd) (not designated for publication).

The key inquiry in these cases is whether the method of electronic testimony used by the State preserves the "salutary effects of face-to-face confrontation" relevant to a Sixth Amendment analysis. *See Stevens*, 234 S.W.3d at 782. These salutary effects include "(1) the giving of testimony under oath, (2) the opportunity for cross-examination, (3) the ability of the fact-finder to observe demeanor evidence, and (4) the reduced risk that a witness will wrongfully implicate an innocent

10

defendant when testifying in his presence." *Id.* (citing *Craig*, 497 U.S. at 845–46); *see Gonzales*, 818 S.W.2d at 764 (applying "*Craig* criteria" and concluding that witness "testified under oath, was subject to extensive cross-examination, and was observed by the judge, the jury and appellant").

Here, Ware's testimony preserved each of these effects. Ware testified under oath, she was cross-examined, the jury was able to observe her demeanor, and the defendant was able to observe Ware throughout her testimony. We conclude that Ware's at-risk pregnancy was an exceptional circumstance that justified her testifying remotely. Accordingly, we hold that the trial court did not abuse its discretion by allowing Ware to testify electronically, and we overrule Montague's second point of error.

## CONCLUSION

Having overruled each of Montague's points of error, we affirm the judgment of conviction.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   January 6, 2016

Do Not Publish

11