In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00275-CR**
_____

**LEROY GIPSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 18-30095**

**MEMORANDUM OPINION**

Leroy Gipson appeals from a jury's verdict in which the jury found him guilty of murder.[1] Gipson raises three issues in his appeal. In all three issues, Gipson argues the evidence is insufficient to support the jury's finding that he acted intentionally or knowingly in causing Roderick Wiltz's death. Because the record shows the jury heard sufficient evidence to support its verdict, we will affirm.

_____

[1]*See* Tex. Penal Code Ann. § 19.02(b)(1), (c).

Analysis

Gipson does not claim the evidence is insufficient to support the jury's finding that, in August 2018, he stabbed Gipson in the chest with a knife. And he does not claim the evidence fails to show that Wiltz died from the stab wound he suffered to his chest. Instead, Gipson argues the evidence fails to prove beyond a reasonable doubt that he intentionally or knowingly caused Wiltz's death. According to Gipson, the "undisputed evidence was that he clearly did not want to kill [Wiltz.]"

To support the argument, Gipson points to his testimony showing that when he gave a statement to the detective who investigated the stabbing, Gipson told her that he hoped Wiltz wouldn't die. After the stabbing, Gipson expressed remorse, explaining he "wasn't intending to kill the guy." During the trial, Gipson testified he just wanted Wiltz to leave him alone because he was tired of being bullied.

The testimony shows Gipson stabbed Wiltz in a barber shop after Gipson passed Wiltz as Gipson was leaving the shop. According to Gipson, as Wiltz was passing by, Wiltz slapped him with an open hand and said: "I was going to get you." Gipson explained that when Wiltz raised his hand to hit him a second time, Gipson pulled a knife from his pocket and used it to stab Wiltz in the chest. Then, Gipson left the shop. Several days later, Wiltz died from the stab wound he suffered to his chest.

After the State rested, Gipson moved for an instructed verdict. In arguing the motion, Gipson claimed the evidence the State presented did not prove that he intentionally or knowingly caused Wiltz's death. The trial court denied the motion. After the jury retired and deliberated on a verdict, it returned and announced that it had found Gipson guilty of knowingly or intentionally causing Wiltz's death by stabbing or cutting him with a deadly weapon, a knife.[2]

Gipson raises three issues in his brief. In Gipson's first two issues, he argues the evidence is insufficient to support the jury's finding that he intentionally or knowingly caused Wiltz's death. In issue three, Gipson argues the trial court erred in failing to grant his motion for instructed verdict.

When evaluating claims asserting insufficient evidence supports the verdict, we examine the evidence from the defendant's trial in the light that favors the verdict the jury reached and decide whether a rational jury could have found the defendant committed the essential elements of the offense beyond a reasonable doubt.[3] As the factfinder in the trial, the jury is the ultimate authority on matters that concern the credibility of the witnesses and the weight to be given their testimony.[4] A reviewing

---

[2]A conviction for murder is a first-degree felony. *See id*. Gipson, however, pleaded *true* to three enhancement allegations, thereby enhancing his punishment range to 25 to 99 years (or life) in prison. *See id.* § 12.42(d).

[3]*Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

[4]*Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981).

court must defer to the responsibility the jury is given to resolve the conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts proven in the trial to the ultimate findings required to vote on the issues presented to it in the charge.[5] If the record from the trial shows the evidence the jury heard supports conflicting inferences, we presume the jury resolved the conflicts in a manner that favors its verdict; for that reason, we will defer to the decision the jury reached in resolving any issues of fact when the decision it made is reasonable based on the evidence it heard during the defendant's trial.[6]

To determine whether the conclusions the jury drew from the evidence are reasonable, we consider the combined and cumulative force of all the evidence the jury heard in the defendant's trial.[7] While a jury may not arrive at its verdict based on "mere speculation or factually unsupported inferences or presumptions[,]" the State need not present direct evidence to prove its case beyond a reasonable doubt.[8] On appeal, we treat circumstantial evidence like direct evidence when evaluating whether the evidence is sufficient to prove a fact; so circumstantial evidence alone may provide support that is sufficient to establish a defendant's guilt.[9] Each fact the

---

[5]*Hooper*, 214 S.W.3d at 13.
[6]*Brooks v. State*, 323 S.W.3d 893, 899 n.13 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
[7]*Clayton*, 235 S.W.3d at 778.
[8]*Hooper*, 214 S.W.3d at 15-16.
[9]*Jenkins v. State,* 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

jury hears in the trial need not point directly and independently to the defendant's guilt when the combined and cumulative force of evidence as a whole provides sufficient support for the jury's verdict.[10] Even when "the parties may disagree about the logical inferences that flow from undisputed facts, [w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."[11]

We measure the evidence before the jury by comparing it to the elements required to prove murder under a hypothetically correct charge.[12] Under the Penal Code, a person commits murder if he "intentionally or knowingly causes the death of an individual[.]"[13]In Gipson's case, we therefore ask whether the jury heard sufficient evidence to allow it to rationally find that Gipson (1) intentionally or knowingly (2) caused Wiltz's death by stabbing him with a knife.

All of Gipson's arguments claim the evidence is insufficient to prove he acted intentionally or knowingly in causing Wiltz's death. For that reason, we limit our review of the evidence to the evidence relevant to these findings, as they are the only

---

[10]*Hooper,* 214 S.W.3d at 13.

[11]*Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006) (cleaned up).

[12]*Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018) (providing that a hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not increase the State's burden of proof, does not restrict the State's theories of liability unnecessarily, and adequately describes the offense at issue in the trial).

[13]*See* Tex. Penal Code Ann. § 19.02(b)(1).

5

ones he challenges. Under Texas law, "[m]urder is a 'result of conduct' offense, which means that the culpable mental state relates to the result of the conduct, i.e., the causing of the death."[14] A person acts *intentionally* in causing another's death when it is his conscious objective or desire to cause the death.[15] And the person acts *knowingly* in causing another's death when he is aware the conduct is reasonably certain to cause the death.[16]

Whether the evidence established that a defendant acted with the requisite intent is usually resolved as a question of fact and deciding that is a question that generally is decided by the jury. And proving whether the defendant acted with the required intent is "almost always proven through evidence of circumstances surrounding the crime."[17] Jurors may rely on circumstantial evidence to decide whether a defendant acted intentionally or knowingly in causing another's death, so they may look to the circumstances surrounding the crime, circumstances that usually include as they do in Gipson's case evidence showing what he said before the stabbing, what he did to commit the stabbing and what he did afterwards, together with the nature and extent of the victim's injuries.[18] Juries may also consider

---

[14]*Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003).

[15]Tex. Penal Code Ann. § 6.03(a).

[16]*Id.* § 6.03(b).

[17]*Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring); *see also Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003).

[18]*Gonzalez v. State,* 616 S.W.3d 585, 594 (Tex. Crim. App. 2020).

6

whether the weapon the defendant used in committing the offense is a weapon the defendant used as a deadly weapon, whether the defendant fled the scene after wounding his victim, and whether the defendant had any motive in committing the crime.[19]

For three reasons, we conclude the evidence supports the jury's finding that Gipson acted intentionally or knowingly in causing Wiltz's death. First, no one disputes that Gipson stabbed Wiltz with a knife, a knife the jury found was a deadly weapon. Gipson acknowledged the knife he used is capable of causing a person's death when he testified, and he does not claim the evidence is insufficient to prove that he used the knife as a deadly weapon.[20]

Second, the jury heard testimony that Gipson left the barber shop immediately after stabbing Wiltz. Gipson neither waited for the police at the shop, nor did he stop and aid Wiltz after he stabbed him in the barber shop. At trial, Gipson explained he left the shop because he was scared. Even so, the jury could reasonably infer that Gipson's decision to leave was evidence of flight, flight intended to avoid being

---

[19]*Cavazos v. State,* 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (stating that the specific intent to kill may be inferred from use of deadly weapon); *Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994) (considering the defendant's flight from the scene, among other facts, in concluding that the evidence was sufficient to support the jury's finding of intent to kill); *Gonzalez*, 616 S.W.3d at 594 (stating motive "is a significant circumstance indicating guilt").

[20]*See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (defining a *deadly weapon* as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury").

caught. Such evidence is viewed on appeal as consistent with a jury's finding of guilt.[21]

Third, the evidence allowed reasonable jurors to infer that Gipson was angry with Wiltz and stabbed him in retaliation for Wiltz slapping him in the face. Addressing Gipson's and Wiltz's relationship with each other in the months before the stabbing, the jury heard testimony that Gipson and Wiltz were not getting along when they were at the barber shop. For instance, some of the witnesses testified the two men called each other names and that Gipson told others he felt like he was being bullied by Wiltz. Gipson testified that, the day before the stabbing occurred, Wiltz threatened to slap him in the face. Gipson pulled a knife from his pocket that day and displayed it to Wiltz in response to the threat. The jury also heard that Gipson told Wiltz the day before the stabbing, when brandishing the knife at Wiltz, he said to Wiltz: "Man, you ain't going to slap the shit out me." Later, Gipson told the shop owner he "[didn't] want no problems, you know. I don't want to fight. I don't want to fight him. I just want [Wiltz] to just leave me alone[.]" Following Gipson's arrest, he told the investigating detective: "Ain't no man going to slap me."

In his appeal, Gipson points to the statement he made to the detective that he did not want Wiltz to die and to the detective's testimony that she believed Gipson

---

[21]*See Alba v. State*, 905 S.W.2d 581, 586 (Tex. Crim. App. 1995) ("[F]light is admissible as a circumstance from which an inference of guilt may be drawn.").

was being sincere when he made that statement. But when faced with conflicting evidence, juries are given the responsibility of deciding how much weight to assign to the evidence and to decide what parts of the testimony they want to believe. Stated another way, as a reviewing court, it is not our role "to sit as a thirteenth juror reweighing the evidence or deciding whether *we* believe the evidence established the element in contention beyond a reasonable doubt; rather, we are to ask ourselves whether the trier of fact, acting rationally, could have found the evidence sufficient to establish the element beyond a reasonable doubt."[22] Here, the jury found Gipson acted intentionally or knowingly in causing Wiltz's death. Given the right and responsibility jurors are given to reject all or any part of a witness's testimony, the jury could have decided that Gipson's remorse after stabbing Wiltz did not show he did not act intentionally or knowingly when the stabbing occurred.[23]

Viewed in the light favoring the jury's verdict, the record contains ample evidence to prove Gipson acted with the required intent in causing Wiltz's death.[24] To prove a defendant acted knowingly, the State only needed to prove (1) Gipson knew stabbing a person with a knife is a reasonably certain way to cause death and (2) Gipson knew that when the stabbing occurred. During the trial, Gipson testified

---

[22]*Blankenship v. State*, 780 S.W.2d 198, 207 (Tex. 1988).
[23]*See Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018).
[24]*See Darnes v. State*, 118 S.W.3d 916, 920-21 (Tex. App.—Amarillo 2003, pet. ref'd).

he knew stabbing someone with a knife could result in the person's death. Here, none of the evidence before the jury shows that when the stabbing occurred, Gipson was unaware that Wiltz's death was a reasonably foreseeable consequence of stabbing him in the chest with the type of knife he used on Wiltz.

Because the evidence supports the jury's verdict, we also find the trial court did not abuse its discretion when it denied Gipson's motion for instructed verdict. Gipson's motion for directed verdict is also based on the argument that the evidence in Gipson's trial did not prove that he acted intentionally or knowingly when he caused Wiltz's death.[25]

For the reasons explained above, the trial court's judgment, which is based on the jury's verdict, is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 24, 2021
Opinion Delivered August 25, 2021
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.

---

[25]*Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990).

10